Argued and submitted December 6, 1983, affirmed February 8, 1984

DEPARTMENT OF REVENUE,
*Respondent,*

*v.*

CARPET WAREHOUSE, INC.,
*Appellant.*

DEPARTMENT OF REVENUE,
*Respondent,*

*v.*

ALAN BOWKER CONSTRUCTION, INC.,
*Appellant.*

DEPARTMENT OF REVENUE,
*Respondent,*

*v.*

BOWKER,
*Appellant.*

(TC 1611, SC 28984)

676 P2d 299

Thomas D. Kershaw, Jr., Klamath Falls, argued the cause and filed the briefs for appellants.

James C. Wallace, Assistant Attorney General, Salem, argued the cause for respondent. With him on the briefs was Dave Frohnmayer, Attorney General, Salem.

JONES, J.

Lent, J., filed a concurring opinion.

## JONES, J.

This is an appeal from a judgment of civil contempt entered by the Oregon Tax Court. Defendants, Alan Bowker, Carpet Warehouse, Inc. (Carpet Warehouse) and Alan Bowker Construction, Inc. (Bowker Construction), seek reversal of the Tax Court's judgment of contempt and order of incarceration. We review *de novo* (ORS 305.445) and from the record find the following: Upon application from the Oregon Department of Revenue, pursuant to ORS 314.365,[1] the Oregon Tax Court issued alternative writs of mandamus directing the three defendants to file tax returns or show cause why they should not. Defendant Bowker was directed to file individual income tax returns for the years 1975 through 1980. Defendants Carpet Warehouse and Bowker Construction were directed to file corporate excise tax returns for the years 1976 through 1979. The defendants failed to comply or show cause why they should not comply with the alternative writs. Peremptory writs of mandamus were issued on November 13, 1981. On April 15, 1982, defendants filed tax return forms for all the years in question which provided defendants' names, addresses and telephone numbers, but no other information. The remainder of the form asserted the privilege against self-incrimination.

Due to defendants' failure to comply with the peremptory writs, a hearing was held in which defendants were directed to show cause why they should not be held in contempt. Findings of fact and conclusions of law were entered in the contempt proceedings. Bowker, individually

---

[1] ORS 314.365 provides:

"If a taxpayer fails to file a return within 60 days of the time prescribed by any law imposing a tax upon or measured by net income, the judge of the Oregon Tax Court, upon petition of the department, or of any 10 taxable residents of the state, shall issue a writ of mandamus requiring the person to file a return. The order of notice upon the petition shall be returnable not later than 10 days after the filing of the petition. The petition shall be heard and determined on the return day or on such day thereafter as the court shall fix, having regard to the speediest possible determination of the case, consistent with the rights of the parties. The judgment shall include costs in favor of the prevailing party. An appeal may be taken from the judgment by the taxpayer or the department to the Supreme Court in the manner that appeals are taken in suits in equity, irrespective of the amounts involved. All writs and processes may be issued from the office of the clerk of the tax court, and, except as otherwise provided in this section, shall be returnable as the court shall order."

and as president of the corporations, was found in contempt of court and ordered to be incarcerated "until he complie[d] with the peremptory writ of mandamus." Defendants appealed from those orders.

Defendants claim six assignments of error in this appeal. The first three assignments of error can be dealt with together. Defendants contend that the peremptory writs should not have issued because: (1) the Department of Revenue failed to make a prima facie case as to the legal obligation of Carpet Warehouse and Bowker Construction to file tax returns; (2) the Department of Revenue failed to exhaust its administrative and legal remedies, in particular ORS 305.265(9),[2] and thus issuance of the writs, which is an extraordinary remedy to be used only in rare cases, was improper; and (3) the writs were issued pursuant to a statutory scheme which unconstitutionally delegates discretion to the Department of Revenue to elect remedies when a taxpayer fails to file or files an improper tax return and the standards for seeking the remedies provided within the statute are so discretionary as to be unconstitutional.

■ The present appeal is from a finding of civil contempt for the failure of the defendants to obey peremptory writs of mandamus from which no appeal was filed. Except for jurisdiction, the issues surrounding the correctness of the peremptory writ may not be raised in a collateral appeal. *See, Department of Revenue v. Bailey,* 294 Or 145, 653 P2d 1264 (1982). We said in *State v. La Follette,* 100 Or 1, 196 P 412 (1921):

> "* * * It is no defense against the contempt proceeding to say that the order which has been disobeyed was not justified by the facts, or was erroneously or improvidently made; because the party has his remedy by appeal and he cannot in a

---

[2] ORS 305.265(9) provides:

"In the case of a failure to file a report or return on the date prescribed therefor (determined with regard to any extension for filing), the department shall determine the tax according to the best of its information and belief, assess the tax plus appropriate penalty and interest, and give written notice of the determination and assessment to the person required to make the filing. The amount of tax shall be reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax which may be lawfully claimed upon the return."

collateral proceeding attack the order for mere irregularities. * * *" *Id.* at 7.

■ Defendants' assignments of error challenge the propriety of the issuance of the peremptory writs of mandamus. Defendants had their opportunity to appeal the peremptory writs and chose not to appeal. Defendants may not now, in an appeal from a contempt proceeding, raise the three abovestated contentions challenging the bases for the peremptory writs.[3] We, therefore, turn to defendants' fourth contention.

■ ■ Defendants contend that the Tax Court erred in rejecting their assertion that to comply with the writs was impossible and thus they should not have been held in contempt. Defendant Bowker, individually and as president of the corporations, claimed that he could not file the tax returns because the process was too costly and too complex. No authority excuses taxpayers from filing Oregon Income Tax returns merely because they assert the forms are too complex or the taxpayer cannot afford to pay someone to fill out the forms. While inability to comply with a court order may be grounds for discharge from imprisonment due to contempt (*see, e.g., Maggio v. Zeitz,* 333 US 56, 75-76, 68 S Ct 401, 92 L Ed 2d 476 (1948)), the inability cannot be brought on by defendant's own contumacious conduct. *State ex rel v. Nichol,* 142 Or 235, 237, 20 P2d 221 (1933). Here, as mentioned, Bowker and the corporate defendants alleged an inability to comply because the filing of tax returns for five and three years, respectively, would be too complex and costly. Defendants brought this situation upon themselves by not filing

---

[3] In support of defendants' third assignment of error, they cite Article I, Section 20, of the Oregon Constitution, which provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

and Article III, Section 1, which provides:

"The powers of the Government shall be divided into three seperate (sic) departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

These provisions are inapplicable because defendants did not appeal from the peremptory writs. This is not the proceeding in which to raise these constitutional claims.

returns for those years and cannot now claim a self-induced inability to comply as a defense to a contempt order. The Tax Court properly rejected defendants' contention.

Bowker's fifth contention is that the Tax Court erred in rejecting his claim that to obey a writ of mandamus may tend to incriminate him in impending federal tax prosecutions. Bowker makes his claim under the United States Constitution and not under the Oregon Constitution.

Originally, Bowker did not file income tax returns for the years 1976-1980. Then, on April 15, 1982, Bowker filed state tax returns for the years in question and on each form he listed his name, his wife's name, their address and telephone number, and he and his wife signed the return. The remainder of each form was completed with the words "Obj 4th & 5th Amend." Attached to the bottom of the form was the following:

"Note Obj 4th & 5th amend. means and objection is taken to the question based on the 4th & 5th amendment to the US Constitution.

"I do not understand this return nor the laws that may apply to me. Signature is involuntarily given under threat of statutory punishment and has not been given freely as to admission of requirement to file this form. I request complete immunity per 18 USC §6002 & §6004 before waiving any constitutional or natural rights, including the Fifth Amendment guarantee of not being a witness against myself."

No information was included from which Bowker's tax liability could be calculated. At the time of the contempt hearing, Bowker was under investigation by the federal government for failure to file federal tax returns for the same years in question. According to the defendant, a Federal Grand Jury had been called, but no indictment had been issued.

The Supreme Court of the United States has held that the privilege against self-incrimination does not justify an outright refusal to file any income tax return. *United States v. Sullivan,* 274 US 259, 47 S Ct 607, 71 L Ed 1037 (1927). In *United States v. Daly,* 481 F2d 20 (8th Cir 1973), and *United States v. Irwin,* 561 F2d 198 (10th Cir 1977), *cert den* 434 US 1012 (1978), those United States Courts of Appeal concluded that a tax return form from which no tax liability can be calculated does not constitute a tax return within the meaning

of the tax laws. These courts applied *Sullivan* and invalidated the Fifth Amendment privilege.

In *United States v. Daly, supra,* defendant filed an income tax return in which he supplied his name, address, occupation and signature. Defendant objected to providing other information on Fifth Amendment grounds. The court said that a tax return not containing information relating to a taxpayer's income from which tax can be computed is not a tax return within the meaning of the Internal Revenue Code. The Fifth Amendment privilege against self-incrimination does not extend to a failure to file a return.

In *United States v. Irwin, supra,* defendant filed a tax return containing his name, address and indicating that defendant was entitled to a refund of approximately $5,000. The remainder of the form showed defendant's objection to the questions asked. The court held that the requirement that an income tax return be filed does not violate the Fifth Amendment because "the privilege cannot be stretched so far as to absolve a taxpayer's duty to file a return." 561 F2d at 201. While it is possible that a valid claim of privilege could be asserted as to specific items of information requested, a return containing no information from which a tax could be determined constituted no return at all.

■■ We adopt the rationale of these federal cases and conclude that Bowker's tax returns are not tax returns within the definition of the Oregon tax laws, because they contain no information from which tax liability could be calculated. The privilege against self-incrimination does not extend to a failure to file a tax return. The Tax Court was correct in rejecting defendant's self-incrimination claim because defendant filed the functional equivalent of no tax return.

■■ Defendants' final assignment of error is that the Tax Court found Bowker, individually and as president of defendant corporations, in civil contempt without evidence of or a finding of a wilful violation of a court order. The Tax Court issued peremptory writs of mandamus. Those writs commanded the defendants "to file Oregon income tax returns for the [years in question] with the Department of Revenue, State of Oregon. * * *" The peremptory writ was served on defendant by personal service in accordance with ORCP 9. The defendants did not comply with the court order and, as we said

above, failed to prove an inability to comply. A party cannot ignore a court order and then claim that the act of ignoring it was not wilful. If a defendant knowingly disregards a court order and does not show an inability to comply therewith, then the element of wilfulness is met in a civil contempt case.

Though not raised by any defendant in the brief, it has been held that writs of mandamus may be issued against corporate entities. If the obligations implanted upon the corporation are not fulfilled, the responsible agent may be punished for contempt. *See, Wilson v. United States,* 221 US 361, 31 S Ct 538, 55 L Ed 771 (1911); *Commissioners v. Sellew,* 99 US 624, 25 L Ed 333 (1878); *see also Leavenworth v. Kinney,* 154 US 642, 14 S Ct 1197, 38 L Ed 1090 (1893).

In *Commissioners v. Sellew, supra,* the county being sued was a corporate and political body. The county's powers were exercised by a municipal board. A peremptory writ was directed against the municipal board. The court stated:

> "* * * As the corporation can only act through its agents, the courts will operate upon the agents through the corporation. When a copy of the writ which has been ordered is served upon the clerk of the board, it will be served on the corporation, and be equivalent to a command that the persons who may be members of the board shall do what is required. If the members fail to obey, those guilty of disobedience may, if necessary, be punished for the contempt. Although the command is in form to the board, it may be enforced against those through whom alone it can be obeyed. * * * While the board is proceeded against in its corporate capacity, the individual members are punished in their natural capacities for failure to do what the law requires of them as the representatives of the corporation. 99 US at 627.

In *Wilson v. United States, supra,* a corporation failed to comply with a subpoena and its officers were held in contempt:

> "* * * A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience and may be punished for contempt. * * *" 221 US at 376.

■ In this case, the captions of the alternative writ orders, peremptory writ orders and show cause orders named the corporate defendants and did not name defendant Bowker individually. Cases have held that courts lack jurisdiction to issue contempt orders to persons who were not parties to the proceeding in which the orders were entered. *See, In Re Reese,* 98 F 984 (1900), *aff'd* 107 F 942 (8th Cir 1901); *McKinney v. Frankfort & State Line Co.,* 140 Ind 95, 38 NE 170, 39 NE 500 (1895); *White v. Roane County Court,* 99 W Va 504, 129 SE 401 (1925). These cases hold that when the party charged with contempt had no notice of the underlying matter, was not before the court in any way, or was not acting as servant or agent for the named defendants, then the court lacked jurisdiction to issue the contempt order to the party. Here, Bowker was individually served with the orders for the alternative writ, peremptory writ and to show cause. He was named in the body of all the orders as "President and responsible officer." Bowker was present at the show cause hearing and stated that he "pretty much" understood the nature of the proceedings. Nevertheless, the Tax Court judge explained the history and nature of the proceedings. Bowker, although not named in the captions of any of the orders, may be held in contempt as the responsible party for the corporation.

The Tax Court is affirmed.

**LENT, J.,** concurring.

I concur in the opinion of the majority but write separately about a recurring problem in this kind of case that arises out of an unfortunate use of the term "writ of mandamus" in ORS 314.365.

When the legislature decided to give the income and corporate excise tax collecting authority a procedure for compelling the filing of a return, the legislature cast that mechanism in the form of having the court, originally the circuit court and later the Oregon Tax Court, issue a "writ of mandamus." The statute does not state whether this is to be an alternative writ or a peremptory writ. From the cases of this nature which have come before this court since I have been a member thereof, it appears to me that the Tax Court interprets the statute to speak to an alternative writ. Nevertheless, the statute prescribes a procedure foreign to proceedings in mandamus.

The statute requires that "the order of notice upon the petition shall be returnable" and that the "petition" shall be heard on the return day. In mandamus the petition for a writ is not a pleading; the petition becomes *functus officio* when the alternative writ is issued. The alternative writ is the primary pleading and serves the function of a complaint in an ordinary civil cause.

That the statute speaks to proceedings in mandamus leads the practitioner, as in the case at bar, to ORS 34.110 to 34.240. Those code sections appear to apply both to circuit courts and the Tax Court. They prescribe a different procedure than that in the text of ORS 314.365. This must be puzzling to those to whom writs are directed under ORS 314.365.

Furthermore, ORS 34.110 states that the writ shall not be issued in any case where there is a plain, speedy and adequate remedy "in the ordinary course of law." That language leads the putative taxpayer to whom a writ is directed under ORS 314.365 to argue that the Department of Revenue must resort to other remedies, such as that provided to the Department under ORS 305.265(9), which provides in apparently mandatory terms what the Department must do in case of a failure to file a return.[1] At first blush it appears to me that that subsection describes a plain, speedy and adequate remedy "in the ordinary course of law."

Another facet of ORS 34.110 raises interesting questions. The section states that a writ may be issued to a person "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust or station." In common parlance we do not think of a putative personal income taxpayer as having a duty resulting from "office, trust or station." If he does not, he is not a proper object of the

---

[1]ORS 305.265(9) states:

"In the case of a failure to file a report or return on the date prescribed therefor (determined with regard to any extension for filing), the department shall determine the tax according to the best of its information and belief, assess the tax plus appropriate penalty and interest, and give written notice of the determination and assessment to the person required to make the filing. The amount of tax shall be reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax which may be lawfully claimed upon the return."

proceeding in mandamus. Obviously, he does not have a duty unless he has an "office, trust or station." Such a putative personal income taxpayer does not hold an "office" that requires the filing of a return. What "trust" is involved? Does he hold a "station"? Perhaps if he is one who, to conform to the laws requiring tax returns, must file a return, that is his station.

Other anomalies are suggested by the text of ORS 34.110 to 34.240, but they need not all be mentioned for the purposes of this separate opinion.

The plain fact of the matter is that by providing a procedure to compel the filing of a return in terms of "mandamus" the legislature has muddied the waters for no good reason other than apparent unwillingness to spell out a procedure precisely applicable to the problem at hand. For instance, a procedure could readily be based upon the sequence of (1) application for an order to show cause why a return should not be required to be filed, (2) making and entry of an order to show cause, (3) service of the order and citation to appear, (4) determination of the matter by appropriate hearing and court order, and (5) appeal. There is simply no need to cast all of this in terms of a writ with all of its common law and statutory trappings.

Were the legislature to respond to this plea, the common weal should well be served.