Argued and submitted December 4, 1989, judgment of contempt vacated and
remanded for further proceedings; money judgment reversed June 20, 1990

# STATE ex rel UNITED FINANCIAL
# SYSTEMS, INC.,
## *Respondent,*

## *v.*

# Rod HOLST,
## *Appellant.*

# (CV 88-0692; CA A60146)

794 P2d 7

George W. Kelly, Eugene, argued the cause and filed the briefs for appellant.

Steve C. Baldwin, Eugene, argued the cause for respondent. With him on the brief was Harrang, Long, Watkinson, Arnold & Laird, P.C.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Defendant appeals a judgment of contempt. ORS 33.010(1)(e). He argues that the trial court erred in holding him in contempt without first determining that he acted with "bad intent" and in awarding a money judgment for plaintiff United Financial Systems, Inc. (UFS).

Defendant was a sales agent for UFS, an Oregon corporation that sells tax-sheltered annuities. In 1987, he left the company and began working for one of its competitors. After leaving, defendant contacted some UFS clients and persuaded them to do business with him. UFS then sued him for intentional interference with economic relations. As part of the settlement of that case, defendant was enjoined from transacting business with any person who had an annuity account with UFS. The contempt proceeding was initiated, because defendant allegedly was not complying with the terms of the injunction. The trial court held him in contempt and, pursuant to ORS 33.110, awarded UFS a money judgment for $8,500.

Defendant's first assignment of error is that the trial court did not find that he had violated the injunction with "bad intent." The trial court found that defendant acted wilfully; however, a finding of wilfulness is not the same as a finding of "bad intent," which is required. *State ex rel Oregon State Bar v. Wright,* 280 Or 713, 720, 573 P2d 294 (1977); *State v. Mauro,* 92 Or App 194, 198, 757 P2d 454, *rev den* 307 Or 101 (1988). Accordingly, the judgment of contempt is vacated and the matter remanded for a determination of whether defendant acted with "bad intent."[1] If the trial court finds that defendant acted with "bad intent" the judgment of contempt shall be reinstated. If not, the proceeding shall be dismissed.

Defendant's second assignment is that the trial court erred in awarding UFS a money judgment for $8,500. ORS 33.110 provides:

---

[1] Defendant also contends that there is insufficient evidence to support such a finding. Because this is a criminal contempt case, *see State v. Thompson,* 294 Or 528, 659 P2d 383 (1983), the contempt must be proven beyond a reasonable doubt. *Hicks v. Feiock,* 485 US 624, 108 S Ct 1423, 99 L Ed 2d 721 (1988); *Drevers and Drevers,* 308 Or 462, 781 P2d 343 (1989). We cannot say as a matter of law that a factfinder could not find beyond a reasonable doubt that defendant acted with "bad intent."

> "If any loss or injury to a party in an action suit or proceeding, prejudicial to the rights of the party therein, has been caused by the contempt, the court or judicial officer, in addition to the punishment imposed for the contempt, may give judgment that the party aggrieved recover from the defendant a sum of money *sufficient to indemnify the party,* and to satisfy costs and disbursements of the party, which judgment, and the acceptance of the amount thereof, is a bar to any action, suit or proceeding by the aggrieved party for such loss or injury." (Emphasis supplied.)

UFS did not argue that it lost sales or commissions as a result of defendant's conduct. It contends, however, that it is entitled to a money judgment to prevent defendant's unjust enrichment, because he received roughly $8,000 in commissions from new business conducted with UFS's former clients. However, ORS 33.110 does not provide authority to recover on that basis in a contempt proceeding. The authority granted in that statute is limited to awarding money damages to indemnify a party for actual loss or injury.

■   UFS nevertheless argues that the $8,500 awarded as damages can be considered compensation for its loss of good will. We review the trial court's decision to determine if there is sufficient evidence to support an award for loss of good will. *Sol-O-Lite Laminating Corp. v. Allen,* 223 Or 80, 93, 353 P2d 843 (1960). UFS admits that it did not present evidence establishing any precise amount of damages from the loss of good will. However, it relies on *Sol-O-Lite Laminating Corp.* to support its position that, because loss of good will cannot be proven with precision, it was not required to present exact proof of such damages.

Although it is correct that proof of precise damages is not necessary, proof of damages cannot be completely speculative. In *Levene et ux. v. City of Salem,* 191 Or 182, 200, 229 P2d 255 (1951), the court stated that damages for loss of good will should not be awarded on the basis of "speculative or conjectural" evidence. There must be "sufficient data from which the court or jury may properly estimate the amount of damages, which data shall be established by facts rather than by mere conclusions of witnesses." 191 Or at 200. In *Levene,* the court did not allow damages for loss of good will, because the only estimate of loss came from the plaintiff, who testified that he "figured" that each of the four clients that he had lost

as a result of the defendant's negligence would tell other people negative things about his business. That, in turn, would result in a loss of potential clients. The court rejected the plaintiff's claim, holding that his testimony was merely speculation and conjecture and was not supported by facts. 191 Or at 200.

In this case, UFS's only proof of loss of good will was from the testimony of one of its managers, who said that its business "reputation could be diminished or marred in some respect" because, in his opinion, the clients who left UFS to conduct business with defendant probably switched allegiances because they thought that UFS was not doing a good job. According to that witness, those clients might then harm UFS's reputation by telling others of their dissatisfaction and UFS would no longer be able to use those clients as a source of leads for new business. However, UFS's witness could not cite a single instance where its business reputation had *in fact* been damaged and, by his own admission, was only offering "generalities of what happens" when clients are lost to a competitor. UFS has introduced only speculative and conjectural evidence unsupported by facts and has not introduced sufficient data from which the court could have estimated loss of good will. *Levene et ux v. City of Salem, supra,* 191 Or at 200; *see also Kwipco, Inc. v. General Trailer Co.,* 267 Or 184, 189-90, 515 P2d 1317 (1973). Accordingly, the trial court erred in awarding damages.

Judgment of contempt vacated and remanded for further proceedings not inconsistent with this opinion; money judgment reversed.